**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Abdulkader Naji Alghaithi,<br><br>Defendant. | No. CR-16-01430-002-TUC-JGZ (LCK)<br><br>**ORDER** |

Pending before the Court is Defendant Adbulkader Naji Alghaithi's Renewed Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 438.) The motion is fully briefed. (Docs. 452, 458, 465.) For the reasons that follow, the Court issues this indicative ruling to the Ninth Circuit that the Court intends to grant the motion if this case is remanded.

**I.     Background**

Mr. Alghaithi was arrested on July 27, 2016, and, following jury trial resulting in a guilty verdict, sentenced to 36 months' imprisonment on October 22, 2019, for selling synthetic cannabinoids to customers at a local market in Tucson, Arizona.[1] He has now served approximately one year of his sentence and, according to the BOP website, is projected to be released on May 9, 2022.

In his motion, Mr. Alghaithi documents the heightened health risks he faces, in light of the COVID-19 pandemic, due to: (1) age, (1) asthma, (3) latent tuberculosis, (4) high

---

[1] Mr. Alghaithi was also sentenced to 36 months' supervised release.

blood sugar, indicating pre-diabetes, and (5) the presence of COVID-19 within FCI La Tuna, where Mr. Alghaithi is incarcerated. Mr. Alghaithi seeks immediate release to home confinement in Tucson, Arizona.

## II.     Jurisdiction

The Government argues that Mr. Alghaithi's pending appeal divests this Court of jurisdiction to order his immediate release and a sentence reduction. "The filing of a notice of appeal is an event of jurisdictional significance" because "it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). This rule applies with equal force in criminal cases, and the District Court does not regain jurisdiction until a mandate is issued. *United States v. Cote*, 51 F.3d 178, 182 (9th Cir. 1995); *United States v. Ward*, No. 01-40050-01-DDC, 2019 WL 1620439, at *3 (D. Kan. Apr. 16, 2019) ("The court thus cannot enter an order reducing Mr. Ward's sentence while his appeal—collaterally challenging the basis for his sentence—is pending."); *United States v. Martin*, No. 18-CR-834-7 (PAE), 2020 WL 1819961, at *1 (S.D.N.Y. Apr. 10, 2020) ("Once Martin filed his notice of appeal challenging the Court's sentence, jurisdiction over the questions raised in his § 3582(c) motion transferred to the Second Circuit."); *United States v. Vigna*, No. S1 16-CR-786-3 (NSR), 2020 WL 1900495, at *3 (S.D.N.Y. Apr. 17, 2020). The Court agrees that this rule is applicable here.

However, as Mr. Alghaithi suggests, and the Government acknowledges, the Court may issue an indicative ruling to the Ninth Circuit. Fed. R. Crim. P. 37(a) ("If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may . . . state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue"); Fed. R. App. P. 12.1(a) (a district court faced with a motion that it "lacks authority to grant because of an appeal that has been docketed and is pending" may "state[ ] either that it would grant the motion or that the motion raises a substantial issue").

//

### III. Motion for Compassionate Relief

Pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), a sentencing court may reduce a term of imprisonment "after considering the factors set forth in section 3553(a) to the extent they are applicable," if the court finds (1) "extraordinary and compelling reasons warrant such a reduction," and (2) "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Additionally, the Court's reduction of a sentence must be "consistent with applicable policy statements issued by the Sentencing Commission."[2] 18 U.S.C. § 3582(c)(1)(A).

### A. Extraordinary and Compelling Reasons

The Sentencing Commission has issued commentary defining "extraordinary and compelling reasons" to include a defendant's medical condition, age, family circumstances, and "other reasons."[3] U.S.S.G. § 1B1.13, cmt. 1. The Court agrees that "the mere existence of Covid-19 in society and the possibility that it may spread to a prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020); *see United States v. Roeder*, No. 20-1682, 807 F. App'x 157, 160-61 (3rd Cir. Apr. 1, 2020) (The "existence of a widespread health risk is not, without more, a sufficient reason for every" inmate to be released.). Instead, a defendant must "demonstrate a nexus" between his medical conditions, age, and the ongoing pandemic. *United States v. Burrill*, 445 F. Supp. 3d 22, 26-27 (N.D. Cal. 2020); *see United States v. Esparza*, No. 1:07-cr-00294, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (noting that the health conditions and age of an inmate "take on added weight because of the COVID-

---

[2] The defendant must also exhaust administrative remedies before bringing a motion under 18 U.S.C. § 3582(c)(1)(A). Mr. Alghaithi's motion shows, and the Government does not dispute, that he has exhausted his administrative remedies.

[3] Courts disagree whether U.S.S.G. § 1B1.13 is applicable to the amended statute, and whether it is exhaustive as to defining "extraordinary and compelling reasons." *See United States v. Decator*, 452 F. Supp. 3d 320, 323-24 (D. Md. 2020) (collecting cases) ("The amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence."); *United States v. Jones*, No. 94-cr-20079-EJD-1, 2020 WL 5359636, at *4-5 (N.D. Cal. Aug. 27, 2020) (stating courts "may consider extraordinary and compelling reasons other than the examples" specifically listed in the policy statement). Assuming the policy statement is inapplicable or non-exhaustive, it provides useful guidance on the meaning of "extraordinary and compelling reasons."

19 virus").

Mr. Alghaithi is a 62-year-old man, who suffers from a number of serious medical conditions including asthma, latent tuberculosis, hyperlipidemia, allergic rhinitis, pre-diabetes, back pain, and chronic joint pain. As counsel for Mr. Alghaithi points out, the conditions most concerning in light of COVID-19 are Mr. Alghaithi's age, asthma, and latent tuberculosis.

The Center for Disease Control and Prevention (CDC) has warned that people of a similar age of Mr. Alghaithi are at a higher risk of becoming severely ill and dying. CENTER FOR DISEASE CONTROL AND PREVENTION, *Older Adults*, Coronavirus Disease 2019 (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html ("In fact, 8 out of 10 COVID-19 related deaths reported in the United States have been among adults aged 65 years and older.").

Mr. Alghaithi suffers from latent tuberculosis. He acknowledges the limited research on the interaction between latent tuberculosis and COVID-19, but points to a study showing the risk of severe illness. Notably, other courts have cited the danger of contracting COVID-19 while having latent tuberculosis. *See United States v. Johnson*, No. H-96-176, 2020 WL 3618682, at *3 (S.D. Tex. July 2, 2020) (stating latent tuberculosis increases a person's risk of severe complications); *see also Doe v. Barr*, No. 20-cv-02141-LB, 2020 WL 1820667, at *5 (N.D. Cal. Apr. 12, 2020) (citing study stating that "individuals with latent or active [tuberculosis] may be more susceptible to SARS-CoV-2 infection," and "COVID-19 progression may be more rapid and severe" in those with latent or active tuberculosis). One court has concluded that having latent tuberculosis, in light of COVID-19, constitutes an extraordinary and compelling reason to warrant compassionate release. *United States v. Atwi*, 455 F. Supp. 3d 426, 431-32 (E.D. Mich. 2020) (finding extraordinary circumstances based on the risk of a co-infection of tuberculosis and COVID-19 "as both are respiratory diseases that affect the lungs").

The CDC has also warned that "[h]aving moderate-to-severe asthma may increase your risk for severe illness from COVID-19." CENTER FOR DISEASE CONTROL AND

PREVENTION, *People with Certain Medical Conditions*, Coronavirus Disease 2019 (Oct. 6, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#asthma; *see Burrill*, 445 F. Supp. at 26 (discussing the risk of severe illness to those with asthma with reference to CDC). Although the BOP records categorize Mr. Alghaithi's asthma as "unspecified" and "uncomplicated," he has suffered from asthma for most of his life and has been experiencing worsening symptoms since he arrived at FCI La Tuna, resulting in him using an inhaler eight times per day. Mr. Alghaithi has also noticed that his symptoms have been aggravated by the increased use of disinfectant chemicals since the beginning of COVID-19. Indeed, the CDC has warned people with asthma to take precautions when using disinfectants, some of which are practically impossible to take within prison. *Id.* Mr. Alghaithi has also been unable to take his prescription for his asthma when needed because of the ration imposed by BOP. Mr. Alghaithi's inability to properly address his worsening asthma is concerning because "COVID-19 can affect your nose, throat, lungs (respiratory tract); cause an asthma attack; and possibly lead to pneumonia and acute respiratory disease." CENTER FOR DISEASE CONTROL AND PREVENTION, *People with Moderate to Severe Asthma*, Coronavirus Disease 2019 (Sept 11, 2020), https://www.cdic.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcornav2Fcornavirus%2F2019-ncov%2Fspecific-groups%2Fasthma.html

      Finally, BOP records indicate that Mr. Alghaithi suffers from pre-diabetes. He is unable to control his high blood sugar with exercise because his asthma is not well-controlled and because of the COVID-19 lockdown in prison. The CDC has acknowledged that people with "diabetes seem to be at a higher risk for developing more serious complications from COVID-19 illness." CENTER FOR DISEASE CONTROL AND PREVENTION, *Symptoms of Coronavirus*, Coronavirus Disease 2019 (May 13, 2020), https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html. Thus, Mr. Alghaithi's inability to address his high blood sugar in prison will place him at further risk for more severe health consequences from COVID-19 due to his high blood sugar.

1 	The Court recognizes and credits BOP's actions in addressing the COVID-19 situation in its prisons; however, the Court is aware that COVID-19 has made its way into FCI La Tuna, where Mr. Alghaithi is incarcerated. According to the BOP website, 22 inmates and 8 staff have had COVID-19, and currently there are 17 confirmed active cases involving staff and 1 active inmate case. FEDERAL BUREAU OF PRISONS, *COVID-19 Cases*, Coronavirus (Oct. 14, 2020), https://www.bop.gov/coronavirus/index.jsp. Therefore, this is not a case where the threat of contracting COVID-19 is merely speculative. *See Raia*, 954 F.3d at 597 (noting that the mere possibility that COVID-19 may spread to a prison does not independently justify compassionate relief).

	In sum, Mr. Alghaithi's medical conditions are ones from which he is expected to not "recover," and he has demonstrated that has been unable to provide "self-care" with respect to his specific medical conditions and with respect to taking the necessary precautions recommended for high-risk individuals of his age and with his underlying medical conditions. *See Burrill*, 445 F. Supp. 3d at 26 (quoting U.S.S.G. § 1B1.13, cmt. 1(A)(ii)); *see also Esparza*, 2020 WL 1696084, at *3 ("In this moment, the inability for high risk individuals to fully self-isolate is an inability to provide self-care."); *Johnson*, 2020 WL 3618682, at *3 (stating that the ability to provide self-care includes "remaining free of the most severe COVID-19 symptoms"). Accordingly, the Court finds that Mr. Alghaithi has shown "extraordinary and compelling reasons" to warrant a reduction in his sentence.

### B. Danger to the Community

	The Court must also consider whether Mr. Alghaithi's release would present a danger to the community based on the factors set forth in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13(2). These factors include the nature of the underlying offense and the history and characteristics of the person. 18 U.S.C. § 3142(g). The government does not specifically dispute Mr. Alghaithi's argument that he is not a danger to the community, and the Court finds that he is not a danger. Aside from this case, which was non-violent, Mr. Alghaithi has no criminal history. The Court also notes that Mr. Alghaithi complied with all of his

pretrial release conditions for almost three years, which shows that he is likely to abide by the conditions imposed by the Court upon his release.

### C. Section 3553(a) Factors

"Congress enacted 18 U.S.C. § 3553(a) in order to ensure that judges impose sentences 'sufficient, but no greater than necessary, to comply with the purposes' of imprisonment, such as deterrence, punishment, and public safety." *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013) (quoting 18 U.S.C. § 3553(a)). "The factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims." *Id.* "Accordingly, the Supreme Court has consistently instructed that 'the punishment should fit the offender and not merely the crime,' and thus judges should use 'the fullest information possible concerning the defendant's life and characteristics' to determine the appropriate sentences." *Id.* at 1008-09 (quoting *Pepper v. United States*, 131 S. Ct. 1229, 1233 (2011)).

Mr. Alghaithi is a 62-year-old man who has supported his family through hard work and low-paying jobs. He has no substance abuse issues with drugs or alcohol. Prior to the non-violent offense in this case, Mr. Alghaithi has never been arrested for or convicted of a crime, and he currently has no disciplinary record in prison. The Court recognizes that although Mr. Alghaithi committed a serious crime of distributing synthetic cannabinoids, the consequences imposed on Mr. Alghaithi are sufficient to meet the purposes of sentencing, including deterrence. Mr. Alghaithi was ordered to forfeit his vehicle and his 50% share in the family home. He also has been incarcerated for approximately one year, which has been difficult for Mr. Alghaithi because of his age and the inability of his family to visit due to COVID-19. Finally, Mr. Alghaithi's medical conditions in combination with the existence of COVID-19 at FCI La Tuna, pose an additional sanction which was not

contemplated at the time of sentencing. After considering the § 3553(a) factors, the Court finds that a reduction in Mr. Alghaithi's sentence is appropriate.

### IV.   Conclusion

Accordingly,

**IT IS ORDERED** that the Clerk of the Court is instructed to provide the Ninth Circuit with a copy of this order stating that the Court would grant Mr. Alghaithi's motion for compassionate release if this case is remanded to the District Court.

Dated this 28th day of October, 2020.

Honorable Jennifer G. Zipps
United States District Judge